J-S36016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.J.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.S.R., MOTHER | No. 3281 EDA 2013 |

Appeal from the Order entered October 28, 2013,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): AP#CP-51-AP-0000413-2013, DP#CP-51-DP-0025209-
2008, FID#51-FN-463940-2009

| | |
|---|---|
| IN THE INTEREST OF: D.C.M, JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.S.R., MOTHER | No. 3284 EDA 2013 |

Appeal from the Order entered October 28, 2013,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): AP#CP-51-AP-0000414-2013, DP#CP-51-DP-0025208-
2008, FID#51-FN-463940-2009

| | |
|---|---|
| IN THE INTEREST OF: E.J.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.S.R., MOTHER | No. 3288 EDA 2013 |

Appeal from the Order entered October 28, 2013,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): AP#CP-51-AP-0000415-2013, DP#CP-51-DP-0002023-
2011, FID#51-FN-463940-2009

BEFORE:    GANTMAN, P.J., JENKINS, and FITZGERALD*, JJ.

MEMORANDUM BY JENKINS, J.:                **FILED OCTOBER 03, 2014**

Appellant, Y.R., ("Mother") appeals from the decrees entered in the

Philadelphia County Court of Common Pleas on October 28, 2013,

---

* Former Justice specially assigned to the Superior Court.

terminating Mother's parental rights to S.J.M. (born in May of 2007), D.C.M., Jr. (born in July of 2003), and E.J.M. (born in April of 2008) (collectively "the Children").[1]  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows.

> On September 13, 2006, the Department of Human Services [("DHS")] received a General Protective Services (GPS) report due to [M]other's present inability to provide proper food for the [C]hildren and failure to provide a safe living environment.  Mother left the [C]hildren in the home alone and unattended. The report stated the neighbors contacted police after one of the [C]hildren was heard screaming about being without parental care.
>
> On January 30, 2008, [DHS] received a [GPS] report, the [C]hildren were left in the home alone for four hours.  The GPS report indicated the caregiver was twelve years old.
>
> [DHS] subsequently learned that [M]other refused to give prescribed medication to one of the [C]hildren who suffered from Attention Deficit Hyperactivity Disorder (ADHD).
>
> On July 14, 2011, In-[H]ome Protective Service through Family Support Center was implemented in the home of [M]other.
>
> On July 18, 2011, a Family Service Plan [("FSP")] meeting was held by the Department of Human Services.  The [FSP] objectives for [M]other were (1) to obtain appropriate housing with adequate and safe living conditions, (2) assure that the [C]hildren were left in the care of appropriate caregivers at all times and not left alone and (3) cooperate with sex therapy services and ensure medication was being administered to the [C]hildren.

---

[1] On October 28, 2013, D.M.'s ("Father") parental rights were terminated. Father is not a party to this appeal, nor did he file his own appeal.

[DHS] visited the home with the In-Home Protective Services social worker and found an unkempt home with a foul odor and flea infestation. There were no beds in the home.

On September 14, 2011, [DHS] held a subsequent [FSP] meeting. The FSP objectives identified were: (1) to maintain a clean, safe home for the [C]hildren, (2) to receive an appropriate medical evaluation for [M]other and the [C]hildren, and (3) to seek employment, job counseling and job referral.

On January 3, 2012, [DHS] received a [GPS] report alleging [M]other was not properly supervising [the C]hildren, and the [C]hildren were begging for food in the neighborhood. The report further alleged S.J.M. was being molested by one of her brothers and by a neighborhood drug dealer. Mother was told of alleged sexual assaults of S.J.M. and left the emergency room and refused treatment for [S.J.M.].

A hearing was held before the Honorable Walter Olszewski on January 4, 2012. The Court adjudicated the [C]hildren dependent and committed the [C]hildren to [DHS]. The [C]hildren were placed in foster care through First Home Care.

Trial Ct. Op., 1/30/14, at 1-2 (unpaginated).

On July 19, 2013, DHS filed a petition to involuntarily terminate Mother's parental rights to the Children. On August 6, 2013 and October 28, 2013, the trial court held hearings on that termination petition. At the hearings, Shaketta Crawford, a DHS social worker; Lakeisha Grant, First Care Home case manager; Sabrina Hall, a DHS foster care worker; Father; and Mother testified. On October 28, 2013, the trial court entered its decrees terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).

On November 25, 2013, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to

- 3 -

Pa.R.A.P. 1925(a)(2)(i) and (b). On January 14, 2014, the appeals were consolidated *sua sponte*. Mother raises the following issues.

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [M]other, under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and § 2511(a)(8)?

2. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of [Mother]'s parental rights best serves the [C]hildren's developmental, physical and emotional needs and welfare?

Mother's Brief at 4.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 4 -

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004). Accordingly, as the trial court focused on Section 2511(a)(1) in terminating Mother's parental rights, we will focus on that section for our review.

The trial court found that DHS presented sufficient grounds to terminate Mother's parental rights under the following subsections of Section 2511(a):

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

   **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

      To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.  In addition,

      Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties.  Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

      Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of

- 6 -

termination of parental rights on the child pursuant to [s]ection 2511(b).

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

On appeal, Mother argues that the trial court erred in terminating her parental rights to the Children. Mother's Brief at 4. Specifically, Mother contends that she is compliant with her FSP objectives. *Id.* at 9.

In terminating Mother's parental rights pursuant to section 2511(a)(1), the trial court reviewed the record and the evidence presented, and concluded that it is clear from the record that, for a period of six months leading up to the filing of the petition for involuntary termination, Mother failed to perform any parental duties for the Children. Trial Ct. Op. at 3 (unpaginated).

The trial court found that

> the testimony established [M]other failed to sign consent forms for medical and mental health treatment for the [C]hildren. Moreover, [M]other failed to attend medical appointments for the [C]hildren. Mother also failed to attend confirmed visits with the [C]hildren. Mother does not have appropriate housing for the [C]hildren. Testimony from the social worker indicated [M]other was unable to control the behaviors of S.J.M. during the visits.

Trial Ct. Op. at 3 (unpaginated). The trial court also found that Mother failed to provide adequate supervision for the Children in the home. *Id.* at 4.

The testimony established that prior reunification efforts between the Children and Mother were unsuccessful due to a lack of stable housing and environment, and Mother's lack of cooperation with DHS. In the instant matter, the trial court found that Mother failed to fulfill her parental duties and responsibilities for two years. *Id.* at 5 (unpaginated). The testimony established that the Children are in a stable environment. Therefore, we are

constrained to conclude that the trial court properly terminated Mother's parental rights pursuant to section 2511(a)(1). We will not disturb the trial court's determinations. ***In re M.G.***, 855 A.2d at 73-74.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Children pursuant to 23 Pa.C.S.A. § 2511(b). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. ***See In Re C.M.S.***, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***Id.*** at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***See id***.

The trial court found that termination of Mother's parental rights to the Children would serve the developmental, physical, and emotional needs and welfare of Children. Trial Ct. Op. at 5 (unpaginated). The trial court found that the "testimony revealed that the relationship between [M]other and [the C]hildren was friendship instead of a parent/child relationship." ***Id.*** at 4.

> [T]he testimony established the Children indicated they did not want to leave their respective foster parents. Moreover testimony revealed E.J.M. refused to attend visits. E.J.M. refused to communicate with [M]other during visits. Lastly, testimony revealed the [C]hildren have stated they do not want to return to their parents.

Trial Ct. Op. at 5 (unpaginated) (citations omitted). Shaketta Crawford testified that Mother is more of a friend to the Children than a mother. N.T., 8/6/13, at 20. Sabrina Hall testified that Mother loves the Children, but there is no bond with Mother and the Children. *Id.* at 63. Ms. Hall also testified that terminating Mother's parental rights to the Children was in their best interest, and the Children would not suffer emotional harm from terminating Mother's parental rights. *Id.* at 64.

The trial court found that the Children have bonded with their foster parents. Trial Ct. Op. at 5 (unpaginated). The trial court found the "testimony described the relationship between S.J.M. and E.J.M and their foster parent as nurturing." *Id.* Ms. Crawford and Lakeisha Grant testified that the Children have a parent-child bond with their foster parents, and not Mother. N.T. at 24-25; 50-52. Ms. Grant testified that the Children call foster mother "Mom," and the Children are affectionate toward foster mother. *Id.* at 52. Moreover, Ms. Crawford testified that foster mother is involved in the Children's activities, and that the Children enjoy being in foster mother's home. *Id.* at 25.

While Mother argues that she loves the Children and has a bond with them, this Court has held that a parent's love of her child, alone, does not

preclude a termination. *See In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007). Likewise, we have stated that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008).

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and the Children which, if severed, would be detrimental to the Children, and that the termination of Mother's parental rights would best serve the needs and welfare of the Children. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

After a careful review, we affirm the decrees terminating Mother's parental rights on the basis of section 2511(a)(1) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2014